FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 01, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IRENE R.,[1] <br><br>  Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>  Defendant. | No.    4:20-cv-5180-EFS <br><br> **ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff Irene R. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by determining that her seizure condition medically improved and she was therefore no longer disabled as of February 2, 2017. Because the ALJ failed to adequately consider Plaintiff's headaches or offer legitimate reasons supported by substantial evidence for discounting two medical opinions, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 18, denies the Commissioner's Motion for Summary Judgment, ECF No. 21, and remands this matter for further proceedings.

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I.    Multi-Step Determination

Determining whether a claimant's eligibility for disability benefits continues involves a multi-step process.[2] The first step determines whether the claimant has an impairment or combination of impairments that meets or equals the severity of a listed impairment.[3] If the impairment does not meet or equal a listed impairment, the second step addresses whether there has been medical improvement of the claimant's condition.[4]

If there has been medical improvement, it is determined at step three whether such improvement is related to the claimant's ability to do work—that is, whether there has been an increase in the claimant's residual functional capacity (RFC).[5] If the answer to step three is yes, the analysis skips to step five.[6]  If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step four.[7]

---

[2] 20 C.F.R. § 416.994.

[3] *Id.* §§ 416.994(b)(5)(i), pt. 404, Subpt. P, App. 1.

[4] *Id.* § 416.994(b)(5)(ii).

[5] *Id.* § 416.994(b)(5)(iii).

[6] *Id.*

[7] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

At step four, it is determined whether any of the special exceptions apply.[8] At step five, if medical improvement is shown to be related to the claimant's ability to work, it is determined whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on the claimant's physical or mental ability to perform basic work activities.[9] If the step-five finding is that the claimant's current impairments are not severe, the claimant is no longer considered to be disabled.[10] If the step-five finding is that the claimant's current impairments are severe, at step six, it is determined whether the claimant can perform past relevant work.[11] Finally, at step seven, if the claimant cannot perform past relevant work, the Commissioner must prove there is alternative work in the national economy that the claimant can perform given her age, education, work experience, and RFC.[12]

## II.   Factual and Procedural Summary

In 2014, Plaintiff was found disabled as of September 8, 2011, based on her seizure disorder.[13] Then during a review of her disability status, Plaintiff was

---

[8] 20 C.F.R. § 416.994(b)(5)(iv).

[9] *Id.* §§ 416.994(b)(5)(v), 416.922.

[10] *Id.* § 416.994(b)(5)(v).

[11] *Id.* § 416.994(b)(5)(vi).

[12] *Id.* § 416.994(b)(5)(vii).

[13] AR 109–17.

determined to no longer be disabled as of February 2, 2017.[14] Following a hearing, this non-disability determination was upheld by the ALJ.[15]

In determining that Plaintiff's disability ended, the ALJ found:

- That on May 12, 2014, the date of the initial disability decision, Plaintiff had the following medically determinable impairments: uncontrolled seizure disorder with epilepsy and degenerative disc disease and spondylosis of the lumbar spine, with the uncontrolled seizure disorder meeting Listings 11.02 and 11.03.

- As of February 2, 2017, Plaintiff had the following medically determinable impairments: seizure disorder, degenerative disc disease of the lumbar spine, major depressive disorder, and unspecified anxiety disorder.

- Step one: Since February 2, 2017, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- Steps two and three: Medical improvement occurred as of February 2, 2017, and the medical improvement was related to the ability to work because Plaintiff's impairments no longer met or medically equaled Listings 11.02 and 11.03.

---

[14] AR 160–62.

[15] AR 58–108.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step five and RFC: Plaintiff could perform sedentary work along with the following limitations:

    - lift up to 10 pounds occasionally and less than 10 pounds frequently.
    - occasionally climb ramps or stairs, balance, stoop, kneel, and crouch.
    - no crawling, working near unprotected heights and hazardous machinery, operating moving machinery including an automobile, and climbing of ladders, ropes, or scaffolds.
    - simple and repetitive, non-tandem tasks not involving fast-paced production work, or extensive independent decision-making or decision-making for others, and only occasional changes in the work setting.
    - occasional superficial interaction with coworkers and supervisors and work away from the general public.

- Step six: Plaintiff had no past relevant work.

- Step seven: beginning February 2, 2017, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work as an addresser, polisher of eyeglass frames, and table worker.[16]

When assessing the medical opinions, the ALJ found:

- the reviewing testimony of Robert Smiley, M.D., and John Nance, Ph.D., very persuasive.

- the examining opinion of William Drenguis, M.D., and the reviewing opinions of Howard Platter, M.D., Gordon Hale, M.D., John Gilbert, Ph.D., and Bruce Eather, Ph.D., persuasive.

---

[16] AR 17–40.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- the examining opinion of Kirsten Nestler, M.D., generally persuasive.

- the treating opinion of Scott Michael, MSW, not persuasive.[17]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the objective medical evidence and other evidence.[18]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[19] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[20] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[21] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[22] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

---

[17] AR 29–31.

[18] AR 26–29.

[19] AR 1–6.

[20] 42 U.S.C. § 405(g).

[21] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[22] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[23] The Court considers the entire record.[24]

Further, the Court may not reverse an ALJ decision due to a harmless error.[25] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[26] The party appealing the ALJ's decision generally bears the burden of establishing harm.[27]

## IV.    Analysis

**A.    Step One: Plaintiff establishes consequential error as to Listing 11.02.**

Plaintiff argues the ALJ failed to conduct an adequate step-one evaluation by failing to give *res judicata* effect to the prior disability determination, failing to explain why Plaintiff's impairments—her seizures and headaches—did not meet

---

[23] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[24] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[25] *Molina*, 674 F.3d at 1111.

[26] *Id*. at 1115 (cleaned up).

[27] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

Listing 11.02, failing to properly evaluate Plaintiff's degenerative disc disease under Listing 1.04A, and failing to properly evaluate Plaintiff's mental health conditions under Listings 12.04 and 12.06.

       1.    <u>*Res Judicata*</u>

      Plaintiff argues the ALJ failed to give *res judicata* effect to the prior disability determination. However, the ALJ had the responsibility to assess whether Plaintiff's disability had medically improved, which includes a multi-step evaluation.[28] When performing this multi-step evaluation, the ALJ was not bound by the prior disability assessment, or findings contained therein, for the new time period.[29] Instead, the ALJ was to compare the current medical and other evidence with the prior medical and other evidence.[30]

---

[28] 20 C.F.R. § 416.994(b)(1)(vi) ("Our decisions under this section will be made on a neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that you have previously been determined to be disabled. We will consider all evidence you submit and that we obtain from your medical sources and nonmedical sources. . . . Our determination regarding whether your disability continues will be made on the basis of the weight of the evidence.").

[29] *Id.* § 416.994(b)(1)(vi); *Lambert v. Saul*, 980 F.3d 1266, 1276 (9th Cir. 2020).

[30] 20 C.F.R. 416.994(b)(1)(vii).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

Because there is no requirement that the ALJ apply *res judicata* principles

when assessing whether Plaintiff's disability continued, the ALJ did not error in

this regard.

> 2.    Listing 11.02

Listing 11.02 requires:

> A. Generalized tonic-clonic seizures, occurring at least once a month
> for at least 3 consecutive months despite adherence to prescribed
> treatment.
> OR
> B. Dyscognitive seizures, occurring at least once a week for at least 3
> consecutive months despite adherence to prescribed treatment.
> OR
> C. Generalized tonic-clonic seizures, occurring at least once every 2
> months for at least 4 consecutive months despite adherence to
> prescribed treatment; and a marked limitation in one of the following:
>> 1. Physical functioning; or
>> 2. Understanding, remembering, or applying information; or
>> 3. Interacting with others; or
>> 4. Concentrating, persisting, or maintaining pace; or
>> 5. Adapting or managing oneself.
> OR
> D. Dyscognitive seizures, occurring at least once every 2 weeks for at
> least 3 consecutive months despite adherence to prescribed treatment;
> and a marked limitation in one of the following:
>> 1. Physical functioning; or
>> 2. Understanding, remembering, or applying information; or
>> 3. Interacting with others; or
>> 4. Concentrating, persisting, or maintaining pace; or
>> 5. Adapting or managing oneself.[31]

The ALJ found that as of February 2, 2017, Plaintiff had the following

medically determinable impairments: seizure disorder, degenerative disc disease of

---

[31] 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.02 (citations omitted).

the lumbar spine, major depressive disorder, and unspecified anxiety disorder.[32]
The ALJ found that the impairments did not individually or in combination meet
or medically equal a listed impairment.[33] Specifically as to Plaintiff's seizure
disorder, the ALJ found that the seizure disorder was well controlled on
medications and that, although Plaintiff periodically had breakthrough seizures,
the seizures occurred during periods of medication noncompliance and therefore
she did not satisfy Listing 11.02.[34] The ALJ also determined that Plaintiff's
migraine headaches and cannabis use were not severe impairments.[35]

Plaintiff argues the ALJ misapplied the term "breakthrough seizure" by
failing to recognize that breakthrough seizures occur when medication *is* being
taken. Regardless of whether Plaintiff's seizures occurred when she was not
complying with medication or were "true" breakthrough seizures, the ALJ
reasonably found that Plaintiff's seizures were better controlled with medication.
The record clearly reflects that the seizures Plaintiff experienced after February 2,
2017, decreased in frequency and severity when compared to the prior disability

---

[32] AR 22.

[33] AR 22–24.

[34] AR 22.

[35] AR 24.

period and that her seizures *by themselves* did not rise to the level of meeting or equaling Listing 11.02.[36]

However, Plaintiff also argues the ALJ failed to consider Plaintiff's headaches under Listing 11.02, specifically Listing 11.02B, which requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. In response, the Commissioner argues that the ALJ rationally found, based on the medical evidence, Plaintiff's statements, and Dr. Smiley's testimony, that Plaintiff's headaches were well controlled and therefore did not meet or medically equal Listing 11.02B.

The ALJ did not discuss Plaintiff's headaches under the listings portion of the decision but rather in a later portion of the decision wherein the ALJ

---

[36] *See, e.g.*, AR 461 (March 2017: one small seizure although taking medication); AR 501 (August 2017: one small seizure although taking medication); AR 496, 492 (Nov. 2017: one small seizure after not taking medication when traveling and another seizure after not taking medication when in jail overnight); AR 709 (May 2018: grand mal tonic-clonic seizure although taking medication); AR 586 (Jan. 2019: reporting recent seizures); AR 658–61 (Feb. 2019: seizure although taking medication); AR 825, 843–44, 935 (June 2019: seizure after vomiting medication due to nausea).

discounted Plaintiff's headache symptom reports and found that her headaches were not a severe impairment.[37] In making this finding, the ALJ highlighted:

- Six neurology records: four reporting that Plaintiff "has some headaches in the right occipital area" for which she takes over-the-counter medication once weekly; another in February 2018 wherein she reported that her last migraine headache occurred 1–2 weeks ago; and another in May 2018 wherein she reported that her migraines were controlled except for one right-sided parietal headache that week.

- That Plaintiff routinely denied headaches during symptom reviews at pain management visits.

- And that there was no evidence of frequent emergency room visits for headaches.

First, as to the four neurology records wherein Plaintiff reported right occipital area headaches, two of these records were before the medical improvement date of February 2, 2017, including one from January 13, 2017, indicating that Plaintiff reported 3 small seizures a few weeks ago.[38] Another, stated, in addition to the report that "she has some headaches in the right occipital area for which she takes over-the-counter-medication once weekly" and that she

---

[37] AR 22–24.

[38] AR 465

had one seizure that month which started out as a headache.[39] As to the February 2018 record, Plaintiff not only reported a headache that occurred 1–2 weeks prior and lasted 48 hours but also that she had a current headache, left occipital pain, and photophobia.[40] The May 2018 treatment record states more fully: Plaintiff's "migraines are controlled except for one this week on Wednesday in which she had a right-sided parietal headache (not stress related) with diarrhea and vomiting and then followed by a grand mal tonic-clonic seizure."[41] When viewed together, these records reflect that Plaintiff's headaches can contribute to, or follow, the seizures and that the seizure medications generally control the seizures but do not fully control Plaintiff's headaches. These records also reflect that Plaintiff's headaches cause her pain and can last over 24 hours. These records do not serve as substantial evidence to support the ALJ's finding that Plaintiff's headaches only impose a mild limitation on her ability to perform basic work activities.

Second, the ALJ highlighted that Plaintiff denied headaches during pain management visits. However, these pain management visits were for Plaintiff's low back pain, not for her headaches. Although it is noted under the "ROS" (review of symptoms) section of the back-pain-management records that she is "negative for dizziness, headaches, paresthesia, and weakness," the accuracy of this notation and

---

[39] AR 461.

[40] AR 483–85.

[41] AR 709.

other default notations, which appears fairly consistency throughout the back-pain-management records is questionable because: 1) Plaintiff was only being treated for low back pain by this provider; 2) under the ROS, it was typically noted that Plaintiff did not have any sleep difficulty or depression even though the "past medical history" on these same treatment records notes that Plaintiff is positive for a seizure disorder and sleep apnea and that she was observed, along with lumbar pain, to be lethargic with depressed mood and flat affect with either fair or poor insight and judgment;[42] 3) notwithstanding the often negative notation for depression under the ROS section, the provider at the April 2018 patient consultation recommended that Plaintiff see a counselor given her PHQ score of 22, which qualifies as severe depression; and 4) the note that Plaintiff's "last seizure was 2/10/18 – mild" was a holdover from the initial treatment record, as Plaintiff had additional seizures during the time she was treated for back pain at Pinnacle Pain Center.[43] Because the accuracy of the ROS language (and other default language) is in question, the ALJ did not legitimately rely on the negative

---

[42] *See* AR 1000–04, 1007–22.

[43] *Compare* AR 1021 (March 2018), AR 1016 (April 2018), AR 1010 (September 2018), AR 1000 (April 2019), AR 993 (May 2019), AR 989 (Sept. 2019), *with, e.g.*, AR 709–12 (May 2018: grand mal tonic-clonic seizure), AR 586 (Jan. 2019: reporting recent seizures), AR 658–59 (reporting seizure in February), AR 778, 825–30, 935 (seizure).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

headache reference in the ROS section of these back-pain-management records to discount Plaintiff's headache symptom reports.

Finally, although the ALJ rationally found that Plaintiff did not have frequent emergency room visits for headaches, Plaintiff did visit the emergency room in September 2018 due to nausea and at time of discharge she complained of a headache. Also, in June 2019, Plaintiff was admitted to the emergency room after having a seizure in front of emergency medical services.[44]

The evidence cited by the ALJ does not serve as substantial evidence to support her finding that Plaintiff's headaches impose no more than a mild limitation on her ability to perform basic work activities. Moreover, the overall medical records concerning Plaintiff's seizures and headaches after February 2, 2017, reveal:

- March 2017: reporting headaches, including one that lead to a seizure.[45]

- May 2017: reporting headaches but no seizures.[46]

- August 2017: reporting a small seizure even with medication.[47]

---

[44] AR 684, 825.

[45] AR 461.

[46] AR 505.

[47] AR 501.

- November 2017: reporting a small seizure in the last week due to missing medication when traveling and right temporal and occipital headaches when she has inadequate sleep.[48]

- November 2017: experiencing a headache due to not taking medication the day before when in jail overnight, was observed to "have horizontal visual complaints," and was assessed with acute confusional migraine, refractory.[49]

- January 2018: reporting some small simple partial type seizures and headaches and observed with mildly tender right temporalis muscle and right occipital area with trigger points.[50]

- February 2018: left occipital pain and reporting a migraine within the last week or two that lasted 48 hours.[51]

- May 2018: reporting migraines are controlled except for a right-sided parietal headache followed by a grand mal tonic-clonic seizure.[52]

- June and July 2018: reporting more migraines of the right occipital and temporal areas, lasting up to 72–96 hours.[53]

- September 2018: headache at time of ER discharge and "some bioccipital tenderness which is not unusual for her."[54]

- January 2019: reporting recent seizures.[55]

---

[48] AR 496.

[49] AR 492–95.

[50] AR 487–89.

[51] AR 483.

[52] AR 709–12.

[53] AR 713–20.

[54] AR 685, 721.

[55] AR 586.

- March 2019: reporting that she is doing well for her transformed migraines and confusional migraines although she had a seizure in February.[56]

- June 2019: reporting a seizure 2 weeks ago.[57]

- June 2019: ER visit for seizure after vomiting medication due to nausea, but also reporting no seizures in several months.[58]

- July 2019: reporting headaches with some mild dizziness and left eye implications.[59]

A comprehensive review of the medical records reveals that the ALJ failed to consider the statement that Plaintiff's headaches were "well controlled" in their medical context.[60] Plaintiff's medical history reflects that she previously experienced up to four seizures a week. Clearly, the seizure medication reduced the severity and frequency of Plaintiff's seizures. However, the medical records reveal that she continued to have some severe and some minor seizures, along with headaches, some which were more severe than others and had physiological abnormalities (temporal, parietal, and occipital lobe tenderness) associated with

---

[56] AR 658–59.

[57] AR 844–45.

[58] AR 778, 825–30, 935.

[59] AR 843.

[60] *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (recognizing that context is crucial because "treatment records must be viewed in light of the overall diagnostic record").

them. As noted by a treating neurologist, it was not unusual for Plaintiff to have occipital tenderness.[61]

In addition, the medical record reflects that stress, which appears to interplay with Plaintiff's depression and anxiety, may contribute to Plaintiff's headaches and seizures. Yet, in analyzing Plaintiff's headaches, the ALJ did not meaningfully discuss the interplay between Plaintiff's depression and anxiety or any medication side-effects.

Plaintiff testified that she gets headaches—including some every month that last a couple of days—and that, although she tells her neurologist about them, he ignores her headache reports.[62] Plaintiff also testified that during her headaches she feels pain on the right side of her head, that her headaches sometimes cause her to throw up, and that they cause her to prefer to stay in bed.[63] In addition, she testified that, although in the past her headaches more frequently led to seizures, she now does not always get seizures following her headaches.[64]

This record reveals at least a reasonable possibility that Plaintiff's migraines, combined with her seizures, might medically equal Listing 11.02. But

---

[61] AR 721 (Sept. 2018: "She does have some bioccipital tenderness which is not unusual for her.").

[62] AR 90.

[63] AR 91.

[64] AR 90–91.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Dr. Smiley did not offer any testimony about Plaintiff's headaches other than agreeing that Plaintiff's headaches could cause nausea or vomiting.[65] Therefore, it is unclear whether Dr. Smiley considered Plaintiff's headaches when offering his opinion that Plaintiff's impairments, either singly or in combination, did not meet or equal Listing 11.02. Moreover, the ALJ did not discuss whether there was a detailed description of a typical headache event for Plaintiff by an acceptable medical source.[66]

On this record, the ALJ and the testifying medical expert needed to have considered Plaintiff's headaches, along with her seizures, any contributing depression and anxiety, and medication side-effects, when assessing whether Plaintiff met or equaled Listing 11.02.[67] Alternatively, if Plaintiff's headaches are considered secondary to her seizure disorder, then the ALJ must meaningfully discuss, and support her findings with relevant substantial evidence, whether the treatment of the seizures sufficiently alleviated the secondary headaches.[68]

---

[65] AR 68–69.

[66] SSR 19-4p ¶ 7.

[67] *See* Social Security Ruling (SSR) 19-4p, *available at* 2019 WL 4169635, at *7 (Aug. 26, 2019); *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990 (requiring the ALJ to consider equivalency when a claimant establishes multiple impairments that, together, might have the findings necessary to meet a particular listing).

[68] SSR 19-4p.

3.     Summary

Because the ALJ erred by failing to consider Plaintiff's headaches (and the impact that her anxiety and depression may have on her headaches and any medication side-effects) when assessing Listing 11.02, this matter must be remanded. The Court therefore does not address Plaintiff's Listing 1.04A argument as to her lumbar impairment or Listing 12.04 and 12.06 arguments as to her mental health impairments. On remand, the ALJ is to reassess the relevant listings.

**B.     Step Two: The ALJ reasonably found that Plaintiff's seizures decreased in severity and frequency but erred by failing to also consider Plaintiff's headaches and medication side-effects.**

Plaintiff argues the ALJ erred by failing to establish that Plaintiff's seizure impairment improved because the ALJ failed to appreciate the definition of "breakthrough seizure" and ignored the fact that in March 2017—one month after the ALJ's determination of medical improvement—Plaintiff reported a seizure despite medication compliance.

In a disability cessation case, the Commissioner considers at step two whether there has been any medical improvement: "any decrease in the medical severity" of the impairments present at the time the claimant was disabled.[69] In assessing whether there has been an improvement in the claimant's signs,

---

[69] 20 C.F.R. § 416.994(b)(1)(i).

symptoms, or laboratory findings, prior and current medical evidence are compared.[70]

In the prior decision awarding disability, the ALJ found that through 2013, Plaintiff was experiencing seizures—grand mal and petit mal seizures—at least four times a week and therefore found that Plaintiff met Listings 11.02 and 11.03 due to her uncontrolled seizure disorder with epilepsy indicated, along with also having the severe impairments of degenerative disc disease and spondylosis of the lumbar spine.[71] Upon review, the ALJ found medical improvement as of February 2, 2017, because 1) neurological records described a history of grand mal seizures that were well controlled on multiple medications, 2) breakthrough seizures occurred during times of non-compliance with medications, 3) Plaintiff reported that she was seizure-free for many months at a time when she remembered to take her medication, and 4) during a December 2016 consultative examination, she reported that her last grand mal seizure occurred over a year ago.

As discussed above, the ALJ rationally found that the extent and frequency of Plaintiff's seizures decreased with the multiple medications. The medical record reflects that Plaintiff no longer experienced seizures four times a week, but rather at a rate that was generally less than monthly. Therefore, regardless of whether the seizures occurred because of medication non-compliance or were "true"

---

[70] *Id.*

[71] AR 113–17.

breakthrough seizures or were precipitated by Plaintiff vomiting her seizure medications due to nausea, the medical record reflects that Plaintiff's seizures decreased in severity and frequency. The ALJ's finding that Plaintiff's seizure impairment *by itself* medically improved is supported by substantial evidence. However, as discussed above, the ALJ erred by failing to consider Plaintiff's headaches, in conjunction with her seizures and any medication side-effects or contributory depression and anxiety, under Listing 11.02.

**C.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff challenges the ALJ's evaluation of Dr. Nestler's examining opinion and Mr. Michael's treating opinion. As discussed below, because the ALJ failed to provide legitimate reasons supported by substantial evidence to find these opinions less persuasive, the ALJ erred.

1.    Standard[72]

An ALJ must consider and evaluate the persuasiveness of all medical opinions.[73] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[74] Supportability and consistency are the most

---

[72] 20 C.F.R. § 416.920c.

[73] *Id.* § 416.920c(a), (b).

[74] *Id.* § 416.920c(c)(1)–(5). When assessing the medical source's relationship with the claimant, the ALJ is to consider the treatment length, frequency, purpose, and

important factors, and the ALJ is required to explain how both of these factors were considered.[75]

    2.   <u>Mr. Michael, MSW</u>

Beginning in December 2018, Mr. Michael was Plaintiff's treating mental healthcare provider, and he diagnosed her with major depressive disorder (recurrent severe without psychotic features), anxiety disorder (unspecified), and cannabis dependence. In October 2019, Mr. Michael completed a mental RFC assessment form, wherein he checked that Plaintiff was:

- markedly limited in her abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and set realistic goals or make plans independently of others.

---

extent, and whether an examination was conducted. The ALJ may also consider whether the medical source has familiarity with the other record evidence or an understanding of the disability program's policies and evidentiary requirements. *Id.* § 416.1520(c)(5).

[75] *Id.* § 416.920c(b)(2), (c)(1)–(2).

- moderately limited in her abilities to understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and travel in unfamiliar places or use public transportation.

- otherwise, either mildly limited or not significantly limited in the other mental activities.[76]

Mr. Michael also assessed marked limitations in the following B criteria: understand, remember, or apply information; concentrate persist, or maintain pace; and adapt or manage oneself, and assessed a moderate limitation for interacting with others.[77] Finally, Mr. Michael opined that Plaintiff would likely be off-task and unproductive more than 30 percent of the workweek and miss four or more days per month.[78] He noted that he could not confirm that the opined limitations did not include limitations from current alcohol or drug use.[79]

---

[76] AR 1030–31.

[77] AR 1032.

[78] AR 1033.

[79] AR 1033.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ discounted Mr. Michael's opinion because 1) it was not supported by adequate explanation, 2) it was not supported by his generally unremarkable mental status examination findings, and 3) it was not supported by the record as a whole.

First, while an ALJ may discount an opinion that is inadequately supported by an explanation, Mr. Michael's checkbox opinion, which contained the additional note that Plaintiff's "severe depression and anxiety make it appear very difficult for this client to work," cannot simply be discounted on the basis of inadequate explanation because the record also contains his underlying treatment notes.[80] Therefore, even assuming the ALJ rationally found that the checkbox form contained an inadequate explanation, this first reason is not a legitimate reason, by itself, to discount Mr. Michael's opinion.

Turning to the second reason (that Mr. Michael's opinion is not supported by his examination findings and treatment records),[81] the ALJ highlighted that although the record reflects waxing and waning of Plaintiff's psychological symptoms, Plaintiff "frequently presented with a normal mood and affect,

_____

[80] AR 1033; *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

[81] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Lingenfelter*, 504 F.3d at 1042.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

cooperative attitude, clear speech, and average eye contact," during her mental health treatment sessions with Mr. Michael and therefore his treatment records did not support the frequency and severity of the cumulative limitations.[82] However, the ALJ's finding that Plaintiff frequently presented to Mr. Michael with a normal mood is not supported by substantial evidence. During the 14 treatment sessions with Mr. Michael, Plaintiff presented on 10 occasions with either depressed or anxious mood, suicidal ideation, or paranoid thinking.[83] And while the

---

[82] AR 31.

[83] *Compare* AR 594–96 (Dec. 6, 2018: depressed mood, full affect, and otherwise normal mental status findings); AR 590–92 (Dec. 20, 2018: depressed mood, full affect, and otherwise normal findings); AR 584–86 (Jan. 18, 2019: normal findings other than concerned about recent seizures and paranoid thinking); AR 581–83 (Jan. 31, 2019: anxious mood, full affect, and otherwise normal findings); AR 577–79 (Apr. 17, 2019: depressed mood, constricted affect, and feeling suicidal but otherwise normal findings except Crisis Services was called because she had a suicidal plan); AR 953–55 (June 13, 2019: depressed but otherwise normal findings); AR 950–52 (July 2, 2019: depressed, anxious, tired, constricted affect, depressive thought content but otherwise normal findings); AR 947–49 (July 26, 2019: paranoid, lonely, but otherwise normal findings); AR 944–46 (Aug. 23, 2019: depressed but otherwise normal findings); AR 941–43 (Sept. 20, 2019: depressed, lonely, but otherwise normal); *with* AR 587–89 (Jan. 4, 2019: euthymic mood, full

ALJ rationally found that Plaintiff frequently presented with cooperative attitude, clear speech, and average eye contact during her sessions, Mr. Michael did not base his opined limitations on any deficiencies with Plaintiff's attitude, speech, or eye contact, but rather on her severe depression and anxiety. Therefore, that Plaintiff frequently presented with cooperative attitude, clear speech, and average eye contact is not a legitimate basis on which to find Mr. Michael's opined limitations resulting from Plaintiff's depression and anxiety unsupported by his treatment records.[84]

Similarly, although the ALJ appropriately considered whether Mr. Michael's opinion was consistent with the record as a whole, the ALJ failed to focus on the mental-health records and findings contained therein. For instance, Plaintiff also received counseling from two other mental health care providers: Lorena Herrera, MA LMHCA, and Chad Longaker, LMHC. The stated psychotherapy goal was to

---

affect, and otherwise normal findings); AR 574–76 (Apr. 22, 2019: euthymic mood and normal findings after being at Transitions Health Crisis Center for two days); AR 571–73 (May 8, 2019: euthymic mood and normal findings); AR 568–69 (May 23, 2019: euthymic mood and normal findings).

[84] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

teach Plaintiff "coping skills to manage current problems with mood."[85] During her

three sessions with Plaintiff, Ms. Lorena mentioned that, although Plaintiff

engaged well and had otherwise normal mental status findings, she was depressed,

sad, and tearful.[86] Mr. Longaker regularly commented that Plaintiff was not

making progress or was making minimal progress and had paranoid thinking.[87]

Mr. Michael's observations were consistent with these counselor's observations.

Therefore, on this record, without more meaningful analysis, the ALJ's

finding that Mr. Michael's opinion is unsupported by the record is not a rational

finding supported by substantial evidence. This error is consequential because if

the RFC incorporated Mr. Michael's opined pace and absenteeism limitations,

Plaintiff would be unable to sustain work.

---

[85] AR 567.

[86] AR 613–15 (Jan. 2018: depressed mood, congruent affect, tearful, and initially

angry but engaged well with organized thought process); AR 610–11 (Feb. 2019:

sad mood, tearful, full affect, and otherwise normal findings and engaged well); AR

607–08 (March 2018: minimal progress).

[87] AR 605–06 (July 2018: no progress, not engaged, and not descriptive); AR 603–04

(Aug. 2018: no progress, client did not engage well during session, minimal speech,

anxious, and depressed); AR 601–02 (Oct. 2018: paranoia, no progress); AR 599–

600 (Nov. 2018: paranoia, minimal progress); AR 597–98 (Nov. 2018: minimal

progress).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

3.    Dr. Nestler

On January 21, 2017, Dr. Nestler completed an evaluation of Plaintiff and diagnosed her with major depressive disorder and rule out learning disorder.[88] Dr. Nestler observed Plaintiff to be quite sedated or possibly medicated (or had an underlying disability or language barrier), that she had difficulty engaging in the examination, and that she appeared significantly depressed.[89] Dr. Nestler opined that, although Plaintiff would not have difficulty performing simple and repetitive tasks, detailed and complex tasks, or work activities on a consistent basis without specific or additional instructions, she would have difficulty accepting instructions from supervisors, interacting with coworkers and the public, maintaining regular attendance in the workplace, completing a normal workday/workweek without interruptions, and dealing with the usual stress encountered in the workplace.[90]

The ALJ found Dr. Nestler's testimony generally persuasive, but then stated:

> Although the limitations are supported by the claimant's appearance and lack of engagement at that one-time psychological interview, she appears far more capable in other medical records. The claimant typically presented with a logical thought process, normal cognition, and average intelligence at psychotherapy visits. Additionally, the possibility that she may have been "impaired" lessens the persuasive value of the one-time psychological evaluation because it is unclear

[88] AR 455–59.

[89] AR 458–59.

[90] AR 459.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 29

whether her functional limitations are due to her being sedated and medicated during the examination or her underlying depression.[91]

As Plaintiff highlights, the ALJ findings are contradictory. First, the ALJ finds Dr. Nestler's opinion generally persuasive, but—while the RFC contained social restrictions and limited Plaintiff to simple and repetitive tasks with only occasional changes in the work setting and no decision-making or extensive independent decision-making—the RFC necessarily requires, based on the vocational expert's testimony, that Plaintiff be on task and productive at least 93 percent of the workday and not absent more than 1 day per month.[92] Yet, Dr. Nestler opined that Plaintiff would have difficulty completing a normal workday or workweek without interruptions and maintaining regular attendance in the workplace.[93] The ALJ's analysis therefore fails to meaningfully explain how the RFC is consistent with Dr. Nestler's generally persuasive opinion.

The ALJ does discuss that Dr. Nestler's opined limitations are inconsistent with Plaintiff's presentation "with logical thought process, normal cognition, and average intelligence" at psychotherapy visits.[94] However, Dr. Nestler did not base

---

[91] AR 30.

[92] AR 105–07.

[93] AR 105–06.

[94] AR 30 (citing AR 577–617, 935–56 (progress notes ranging from January 2018 to September 2019 from Tri-Cities Community Behavioral Health Services)).

her opined limitations on any cognitive limitations, as she found that even with somewhat slow processing speed and poor calculations, Plaintiff was able to perform short and simple tasks, as well as detailed and complex tasks. Therefore, these cited psychotherapy notes were not inconsistent with the basis for Dr. Nestler's opined limitations. Instead, consistent with Dr. Nestler's findings that Plaintiff was significantly depressed, Plaintiff's treating mental health providers frequently found Plaintiff to be depressed, anxious, or paranoid.[95] Moreover, Plaintiff was admitted for crisis services due to her depression.[96]

Finally, it was not reasonable for the ALJ to discount Dr. Nestler's opinion based on the comment that Plaintiff may have been impaired due to being "quite sedated and medicated during the examination" or it was "secondary to underlying depression."[97] First, if Plaintiff's observed impairment was due to her medication, the ALJ needed to consider the side-effects of Plaintiff's medications.[98] Second, if Plaintiff's observed impairment was due to her underlying depression, this would support Dr. Nestler's opined limitations.

---

[95] AR 77–617, 935–56

[96] AR 574–79.

[97] AR 458.

[98] *See* SSR 16-3p (allowing the medical source to consider medication side-effects and requiring the ALJ to consider medication side-effects when assessing the claimant's symptom reports).

The ALJ erred by failing to offer legitimate reasons supported by substantial evidence for discounting portions of Dr. Nestler's opinion.

4.  Summary

The ALJ erred when considering the medical opinions of Mr. Michael and Dr. Nestler. These errors were consequential as both Mr. Michael and Dr. Nestler opined that Plaintiff was unable to sustain workplace pace and attendance. Because remand is required due to these errors and step-one errors, the Court need not separately address Plaintiff's RFC argument.

**D.    Remand:  Further proceedings are needed.**

Plaintiff submits a remand for payment of benefits is warranted.

A district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits."[99] The "credit-as-true" rule, on which Plaintiff relies, is a "rare and prophylactic exception to the ordinary remand rule."[100] For the Court to remand for award of benefits, three conditions must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[101]

---

[99] *Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017).

[100] *Id.*

[101] *Garrison*, 759 F.3d at 1020.

Here, the second and third conditions are met. The ALJ failed to provide legally sufficient reasons for rejecting Mr. Michael's and Dr. Nestler's opinions and, if these opinions are credited as true, Plaintiff would be considered disabled because she is unable to sustain work due to pace and attendance limitations. However, further administrative proceedings are needed. Although the record reflects that Plaintiff's pace and attendance will be impacted by her seizures, headaches, depression, anxiety, and low-back pain,[102] it is not clear that these impairments impact her to such extent that she will be absent more than one day per month and off task more than 6–7 percent of the day. The record is in conflict in this regard, as Dr. Nance testified that "even [Mr. Michael's] own Mental Status Evaluations would not have supported th[e] degree of limitation" opined by Mr. Michael, and the nonexamining physicians and Dr. Drenguis opined that Plaintiff could sustain work with appropriate exertional, social, and other limitations.[103]

Remand is therefore required. On remand, the ALJ is to consider whether the record contains a detailed description of Plaintiff's typical headache event,

---

[102] *See, e.g.*, AR 1020–22, 1013–18, 1007–11, 1000–04 (generally showing decreased lumbar range of motion, tender lumbar, lethargy, depressed mood, flat affect, and impacted insight and judgment).

[103] AR 76–77.

including all associated phenomena, by an acceptable medical source, or whether the record must be supplemented with such evidence. In addition, the ALJ must obtain testimony from a medical source qualified to opine as to Plaintiff's headaches and seizures, including any medication side-effects and the contributory impact, if any, of Plaintiff's depression, anxiety, and lumbar pain. The ALJ is to then reevaluate whether Plaintiff's disability status continued.

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ is to ensure the record contains a detailed description of a typical headache event and obtain testimony from a medical source qualified to opine as to Plaintiff's headaches and seizures, including any medication side-effects and the contributory impact, if any, of Plaintiff's depression, anxiety, and lumbar pain. The ALJ is to then reevaluate whether Plaintiff's disability status continued.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 1st  day of December 2021.

s/Edward F. Shea
_____
EDWARD F. SHEA
Senior United States District Judge
